# SIXTH DISTRICT COURT OF APPEAL
## STATE OF FLORIDA

_____

Case No. 6D2023-0587
Lower Tribunal No. 21-0059
_____

LIGHTSEY CATTLE COMPANY,

Appellant,

v.

FLORIDA FISH AND WILDLIFE CONSERVATION COMMISSION,

Appellee.

_____

Appeal from the Florida Fish and Wildlife Conservation Commission.

July 12, 2024

MIZE, J.

In this administrative law appeal, Appellant, Lightsey Cattle Company ("Appellant" or "Lightsey"), appeals a final order entered by the Florida Fish and Wildlife Conservation Commission (the "Commission") that upheld the Commission's issuance of a conditional hunting preserve license to Lightsey.[1] Specifically, Lightsey objects to the condition placed on the license, which is that

_____

[1] This case was transferred from the Second District Court of Appeal to this Court on January 1, 2023.

Lightsey construct a fence around its hunting preserve. We conclude that this court lacks jurisdiction over the appeal and that Lightsey's proper remedy is to seek review of the Commission's order by petition for writ of certiorari in circuit court. Because the notice of appeal was timely and otherwise sufficient to invoke certiorari jurisdiction, we transfer this case to the Circuit Court of the Ninth Judicial Circuit in and for Osceola County.

## Background and Procedural History

The Commission was created by article IV, section 9 of the Florida Constitution. The Constitution provides that the Commission "shall exercise the regulatory and executive powers of the state with respect to wild animal life and fresh water aquatic life."[2] Art. IV, § 9, Fla. Const. The Commission's power to adopt rules to regulate game and fresh water fishing in the State is exclusive, and its rules adopted to this end are tantamount to legislative acts. *Airboat Ass'n of Fla., Inc. v. Fla. Game & Fresh Water Fish Comm'n*, 498 So. 2d 629, 631-32 (Fla. 3d DCA 1986); *Wakulla Com. Fishermen's Ass'n. v. Fla. Fish & Wildlife Conservation Comm'n*, 951 So. 2d 8, 9 (Fla. 1st DCA 2007).

---

[2] Article IV, section 9 includes one exception to the Commission's power to exercise the regulatory and executive powers of the state with respect to wild animal life and fresh water aquatic life, which is that "all license fees for taking wild animal life, fresh water aquatic life, and marine life and penalties for violating regulations of the commission shall be prescribed by general law."

Pursuant to its constitutional authority, the Commission has adopted a rule requiring every private hunting preserve to be enclosed by a fence that meets certain requirements, the specifics of which are not material to this appeal. The rule is set forth in Rule 68A-12.010(8) of the Florida Administrative Code (the "Fencing Rule").

In 1987, Lightsey applied for and received from the Commission's predecessor agency, the Florida Game and Freshwater Fish Commission (the "Predecessor Commission"), a license to operate a hunting preserve on Brahma Island, which is located inside Lake Kissimmee in Osceola County.[3] The hunting preserve encompasses the entire island. The license was valid for one year. The license contained a note handwritten by a then-Bureau Chief of the Predecessor Commission which stated, "water barrier OK for existing facilities." After this license was issued, Lightsey continued to apply for and receive annual license renewals every year from the Predecessor Commission and later, the Commission,

---

[3] The Predecessor Commission was merged into the Commission in 1999 after the voters of Florida enacted an amendment to article IV, section 9 of the Florida Constitution that created the Commission. Under the version of article IV, section 9 in effect prior to this constitutional amendment, the Predecessor Commission also exercised "the regulatory and executive powers of the state with respect to wild animal life and fresh water aquatic life." Art. IV, § 9, Fla. Const. (1974). The Predecessor Commission originally adopted the Fencing Rule, and the Commission maintained the rule after the Commission was created. The Commission last amended the Fencing Rule in 2018 when it amended the rule to change the specifications that a fence must meet in order to satisfy the rule.

without either the Predecessor Commission or the Commission ever making any attempt to enforce the Fencing Rule against Lightsey's island hunting preserve. Over the years, the Commission's annual inspection reports for the hunting preserve often contained references to Lightsey's exemption from the Fencing Rule and noted that the exemption was granted in 1987.[4]

The Commission's position with respect to Lightsey's hunting preserve changed in 2021. When Lightsey's license came up for its annual renewal in June of 2021, the Commission granted Lightsey only a conditional hunting preserve license. Specifically, the license conditioned Lightsey's ability to operate the hunting preserve on Lightsey erecting a fence around the hunting preserve that complied with the Fencing Rule. The license provided that Lightsey's failure to comply with the Fencing Rule within twelve months of the issuance of the license would result in the Commission denying Lightsey a renewal of its license for the following twelve-month period.

Lightsey challenged the Commission's issuance of the conditional license, and specifically the imposition of the condition for Lightsey to comply with the Fencing Rule, by filing with the Commission a petition (the "Petition") for an administrative proceeding pursuant to sections 120.569 and 120.57, Florida Statutes,

---

[4] Lightsey obtained annual licenses for its hunting preserve every year since at least some time in the 1970s, but the 1987 license is the license that Lightsey asserts contained a permanent exemption from the Fencing Rule.

which are part of the Administrative Procedure Act (the "APA").[5] These sections provide for two types of hearings. Section 120.57(1) applies whenever a proceeding involves a disputed issue of material fact. § 120.569(1), Fla. Stat. (2011). Hearings under section 120.57(1) are conducted by an administrative law judge assigned by the Division of Administrative Hearings ("DOAH"). Section 120.57(1) also provides the parties with various significant procedural rights, including the right to, among other things, present evidence and cross-examine witnesses. A hearing conducted under section 120.57(1) is referred to as a "formal hearing." Section 120.57(2) applies when a proceeding does not involve a disputed issue of material fact. § 120.569(1), Fla. Stat. Hearings under section 120.57(2) are conducted by a hearing officer assigned by the Commission. Under section 120.57(2), the parties have significantly fewer procedural rights and do not have the same rights with respect to the submission of evidence. A hearing conducted under section 120.57(2) is referred to as an "informal hearing."

In its Petition, Lightsey asserted, among other things, that the notation on its 1987 license constituted a permanent exemption from the Fencing Rule (including any future amendments thereto) granted to Lightsey by the Commission. Lightsey requested a formal hearing before DOAH under section 120.57(1) to present

---

[5] As will be explained below, the administrative proceeding in this case was not actually conducted under the APA, but rather under the Commission's own procedures which incorporate the text of the APA but are not, in fact, the APA.

evidence and prove that it possessed the exemption. The Commission responded to the Petition by sending Lightsey a letter stating that there were no material facts in dispute and that, therefore, the Commission would only allow Lightsey an informal hearing under section 120.57(2). Despite additional subsequent objections from Lightsey, the Commission maintained its position that Lightsey was not entitled to a formal hearing under section 120.57(1).

The informal hearing was conducted in December 2021. In its brief submitted to the Commission before the hearing and then again at the hearing, Lightsey argued that it possessed an exemption to the Fencing Rule and that, even if it did not actually possess an exemption, the doctrine of estoppel should prevent the Commission from enforcing the Fencing Rule against Lightsey. At the hearing, Lightsey also again objected to the Commission holding an informal hearing, again requested that the hearing officer refer the parties to DOAH to hold a formal hearing under section 120.57(1), and then attempted to present various pieces of evidence. The Commission argued in response that there were no material facts in dispute because the Commission, as a matter of law, does not have the legal authority to grant exemptions to the Fencing Rule.[6] The Commission asserted that since it cannot

---

[6] The parties' disagreement regarding whether the Commission possesses legal authority to grant exemptions to the Fencing Rule centers on whether the Commission is bound by section 120.542 of the APA, which concerns variances and waivers, in its enforcement of the Fencing Rule, as well as the proper interpretation of that section if the Commission is bound by it. Which party is correct about this

6

legally grant an exemption to the Fencing Rule, the notation on Lightsey's 1987 license could not, as a matter of law, be an exemption regardless of what the notation stated. The hearing officer denied Lightsey's request for a formal hearing and proceeded with the informal hearing.[7]

After the hearing, the hearing officer issued his Recommended Order, which denied Lightsey's challenge to the conditional hunting preserve license. While the order is not perfectly clear, the hearing officer appears to have adopted the position of the Commission that the Commission cannot legally grant an exemption to the Fencing Rule and that, therefore, the notation on Lightsey's 1987 license could not, as a matter of law, be an exemption. Lightsey submitted Exceptions to the Recommended Order. In June 2022, the Commission entered a Final Order which rejected Lightsey's exceptions, accepted the Recommended Order of the hearing officer, and upheld the issuance of Lightsey's conditional hunting preserve license. Lightsey then filed this appeal.

On appeal, Lightsey argues that its Petition raised disputed issues of material fact, specifically whether Lightsey possessed a permanent exemption from the Fencing Rule and whether the Commission should be estopped from enforcing the

_____

issue is not material to this opinion given our determination that we lack jurisdiction to decide this appeal.

[7] While the hearing officer accepted some evidence, he denied Lightsey's request for a formal hearing under section 120.57(1) and ultimately prohibited Lightsey from introducing most of the evidence that Lightsey attempted to introduce.

7

Fencing Rule against Lightsey. Lightsey argues that because its Petition presented disputed issues of material fact, the Commission committed reversible error by refusing to grant Lightsey a formal administrative hearing before DOAH under section 120.57(1).

**Analysis**

## I.    Jurisdiction

Both parties in this case agree that we possess jurisdiction over this appeal. However, "the parties cannot confer jurisdiction on the court that it does not have by agreement or acquiescence." *Shannon v. Cheney Bros. Inc.*, 157 So. 3d 397, 399 (Fla. 1st DCA 2015). "We have an independent obligation to examine our jurisdiction in every case." *Riggins v. Clifford R. Rhoades, P.A.*, 373 So. 3d 655, 660 n.4 (Fla. 6th DCA 2023). Accordingly, we begin by determining whether we possess jurisdiction.

"Article V, Section 4(b)(2) of the Florida Constitution establishes the basic jurisdiction of district courts of appeal to review the action of administrative agencies by direct appeal." *Airboat Ass'n*, 498 So. 2d at 631. Article V, section 4(b)(2) provides: "District courts of appeal shall have the power of direct review of administrative action, as prescribed by general law."

Thus, in order for a district court of appeal to have jurisdiction over a direct appeal of an action by an administrative agency, there must be a general law

8

prescribing such jurisdiction. In this case, the only general law that the parties have cited in support of their assertion that we possess jurisdiction over this appeal is section 120.68 of the APA, which states: "A party who is adversely affected by final agency action is entitled to judicial review. . . . Judicial review shall be sought in the appellate district where the agency maintains its headquarters or where a party resides or as otherwise provided by law." § 120.68(1)(a), (2)(a), Fla. Stat. (2016).

The problem is that the Commission, when acting pursuant to its constitutional powers, is not an "agency" as defined by the APA, and its actions, therefore, are not "agency action." Section 120.52(1)(a) of the APA defines agency to mean certain officers and governmental entities, including the Commission, "if acting pursuant to powers *other than those derived from the constitution*." (emphasis added). In this case, both parties agree that the Commission promulgated the Fencing Rule pursuant to its constitutional authority granted by article IV, section 9. Additionally, in enforcing the Fencing Rule, the Commission was exercising the executive power of the state with respect to wild animal life, also pursuant to its constitutional authority. *See* Art. IV, § 9, Fla. Const.; *Wakulla Com. Fishermen's Ass'n*, 951 So. 2d at 9 ("[A] rule adopted by [the Commission] is tantamount to a legislative act." (quoting *Airboat Ass'n*, 498 So. 2d at 631 (internal quotations omitted))); *Tyson v. Viacom, Inc.*, 760 So. 2d 276, 277 (Fla. 4th DCA 2000) ("The enforcement of laws is a function of the executive branch of government."); *Curry*

9

*v. State*, 811 So. 2d 736, 743 (Fla. 4th DCA 2002) ("[T]he enforcement of laws is also a function of the executive branch of government."). Thus, both in adopting and enforcing the Fencing Rule, the Commission was acting pursuant to powers derived from the Florida Constitution and, therefore, was not an "agency" for purposes of the APA. Consequently, a party who is adversely affected by the Commission's adoption or enforcement of the Fencing Rule is not "adversely affected by final *agency* action" under the APA, nor can judicial review be sought in the appellate district where the *agency* maintains its headquarters because the Commission, for purposes of the Fencing Rule, is not an agency as defined in the APA. *See Decker v. Univ. of W. Florida*, 85 So. 3d 571, 573 (Fla. 1st DCA 2012) ("A decision is reviewable by appeal to a district court of appeal under the general provisions of the Administrative Procedure Act only if the person or entity rendering the decision falls within the statutory definition of an agency. The Act limits the definition of an agency to persons or entities 'acting pursuant to powers other than those derived from the constitution.' The significance of this limitation is clear: when an officer or agency is exercising power derived from the constitution, the resulting decision is not one that is made by an agency as defined in the Administrative Procedure Act." (internal citations omitted)).

After this Court requested supplemental briefing concerning whether this Court possesses jurisdiction over this appeal, the Commission filed its supplemental

10

brief in which it argued that the Commission actually was acting pursuant to the APA when it denied Lightsey a formal hearing, when it conducted the informal hearing that it did allow Lightsey, and when it denied Lightsey's Petition and entered the Final Order. Specifically, the Commission argues that article IV, section 9 requires that "[t]he commission shall establish procedures to ensure adequate due process in the exercise of its regulatory and executive functions." With respect to the enforcement of rules promulgated under its constitutional authority, the procedures the Commission has adopted to satisfy this requirement are certain provisions of the APA, including sections 120.569, 120.57 and 120.68.[8] *See* Fla. Admin. Code R. 68-1.008(5). The Commission argues that because the Commission has adopted portions of the APA to govern proceedings concerning the enforcement of rules adopted pursuant to its constitutional authority, including the administrative proceeding at issue in this case, the Commission was acting pursuant to the APA when it denied Lightsey a formal hearing, when it conducted the informal hearing, and when it denied Lightsey's Petition and entered the Final Order upholding the Commission's issuance of Lightsey's conditional license. Accordingly, the Commission argues, its action in entering the Final Order was final agency action under the APA. And because the Commission has adopted section 120.68, judicial

---

[8] The parties dispute whether the Commission has adopted and is bound by section 120.542. *See* note 6, *supra*.

11

review of the Commission's Final Order can be sought in the appellate district where the Commission maintains its headquarters or in any appellate district where a party to the appeal resides. There are two problems with this argument.

First, jurisdiction of a district court of appeal over a direct appeal of administrative action can only be prescribed by general law. Art. V, § 4(b)(2), Fla. Const. The Commission cannot enact a "general law." *See* Art. III, § 1, Fla. Const. ("The legislative power of the state shall be vested in a legislature of the State of Florida, consisting of a senate composed of one senator elected from each senatorial district and a house of representatives composed of one member elected from each representative district."); Art. III, § 6, Fla. Const. ("The enacting clause of every law shall read: "Be It Enacted *by the Legislature* of the State of Florida." (emphasis added)).

While the Commission was certainly permitted to incorporate the APA as its due process procedures, that does not mean that its due process procedures *are* the APA or that the Commission acts pursuant to the APA when it utilizes those procedures. The Commission was not required to adopt the APA as its due process procedures. The Commission could have also adopted the due process procedures used by a particular agency of the federal government or the procedures utilized by another state or an agency thereof. The Commission could have also written its own procedures from scratch. If the Commission had adopted as its due process

procedures the federal Administrative Procedure Act, some due process procedures set forth in the statutes of the State of Georgia, or the Code of Hammurabi for that matter, the Commission would not be acting pursuant to federal law, Georgia law, or the Code of Hammurabi when it conducted its proceedings. Rather, the Commission would be acting pursuant to its own due process procedures which incorporate the text of another set of procedures.

Simply put, when the Commission acts pursuant to its own procedures that incorporate the text of a general law, it is acting under its own procedures, not under general law. The Commission has no authority to enact general laws, and it cannot do so by adopting rules that incorporate the text of a general law. The Commission was not acting under the APA when it conducted the administrative proceeding at issue in this case, and there was no final agency action under section 120.68. While section 120.68 is a general law, the Commission's procedures incorporating section 120.68 are not a general law.

Second, section 120.52(1)(a) defines agency to mean certain officers and governmental entities, including the Commission, "if acting pursuant to powers other than those derived from the constitution." Thus, for an agency to be an agency for purposes of the APA, it must be acting pursuant to a power not derived from the Constitution, such as a power derived from a statute.

Even if the Commission had the authority to and did "adopt the APA" to govern the administrative proceeding at issue in this case such that the Commission was acting pursuant to the APA when it conducted the proceeding (which it does not and did not), the Commission still was not acting pursuant to power *derived from the APA*. The APA does not grant agencies power to act. Rather, the APA governs an agency's exercise of power derived from some source of law other than the APA. § 120.515, Fla. Stat. (2012) ("This chapter provides uniform procedures *for the exercise of specified authority*." (emphasis added)).

When a statutorily created agency enforces a rule promulgated pursuant to its statutory authority, and the enforcement of that rule against a party requires a hearing under the APA, it was the statute under which the rule was promulgated that granted the agency the power to promulgate and enforce the rule, not the APA. The APA governs the agency's exercise of its authority to promulgate and enforce the rule, but the power to promulgate and enforce the rule is derived from the statute that authorized the agency to promulgate and enforce the rule. Thus, even if the Commission had the power to and did "adopt the APA" to govern the administrative proceeding conducted in this case such that the proceeding was conducted pursuant to the APA, the APA still would not grant us jurisdiction over this appeal because the Commission's power to take action in this case was derived from the Florida

14

Constitution and the Commission's final action, therefore, was not "final agency action" for purposes of section 120.68.

Because there is no general law prescribing this court jurisdiction over a direct appeal of the administrative action taken by the Commission in this case, we lack jurisdiction to decide this appeal.

## II.    Appropriate Remedy and Forum

While we lack jurisdiction to decide a direct appeal of the Commission's Final Order, that does not end our analysis.  Florida Rule of Appellate Procedure 9.040(c) states that "[i]f a party seeks an improper remedy, the cause must be treated as if the proper remedy had been sought."  Rule 9.040(b)(1) states that "[i]f a proceeding is commenced in an inappropriate court, that court will transfer the cause to an appropriate court."  Therefore, we must determine if Lightsey could have sought a different remedy other than a direct appeal and, if so, what was the appropriate court in which Lightsey should have sought that remedy.

The Florida Constitution gives both district courts and circuit courts the power to issue writs of certiorari. Art. V, § 4(b)(3), Fla. Const. ("A district court of appeal may issue writs of mandamus, certiorari, prohibition, quo warranto, and other writs necessary to the complete exercise of its jurisdiction."); Art. V, § 5(b), Fla. Const. (Circuit courts "shall have the power to issue writs of mandamus, quo warranto,

certiorari, prohibition and habeas corpus, and all writs necessary or proper to the complete exercise of their jurisdiction.").

The power vested by Article V in district courts and circuit courts to issue writs of certiorari includes the authority to issue writs of certiorari as this power existed in courts in the common law. *See G-W Dev. Corp. v. Vill. of N. Palm Beach Zoning Bd. of Adjustment*, 317 So. 2d 828, 829-30 (Fla. 4th DCA 1975); *see generally Haines City Cmty. Dev. v. Heggs*, 658 So. 2d 523, 525-28 (Fla. 1995). Florida Rule of Appellate Procedure 9.030 explicitly recognizes the power of district courts and circuit courts to issue common law writs of certiorari, as distinct from their authority to issue writs of certiorari in other circumstances set forth in the rules promulgated by the Florida Supreme Court. As to district courts, Rule 9.030(b)(2), entitled "Certiorari Jurisdiction," provides that "[t]he certiorari jurisdiction of district courts of appeal may be sought to review . . . nonfinal orders of lower tribunals other than as prescribed by rule 9.130 . . . or . . . final orders of circuit courts acting in their review capacity." Rule 9.030(b)(3), entitled "Original Jurisdiction," then provides that "[d]istrict courts of appeal may issue writs of mandamus, prohibition, quo warranto, and *common law certiorari*, and all writs necessary to the complete exercise of the courts' jurisdiction." (emphasis added). Similarly, Rule 9.030(c), entitled "Certiorari Jurisdiction," provides that "the certiorari jurisdiction of circuit courts may be sought to review nonfinal orders of lower tribunals other

16

than as prescribed by rule 9.130." Rule 9.030(c)(3), entitled "Original Jurisdiction," then provides that "[c]ircuit courts may issue writs of mandamus, prohibition, quo warranto, *common law certiorari*, and habeas corpus, and all writs necessary to the complete exercise of the courts' jurisdiction." (emphasis added).

"[T]he English common-law writ of certiorari was an original writ issuing out of chancery or the King's Bench, directing that an inferior tribunal return the record of a pending cause so that the higher court could review the proceedings." *Haines City Cmty. Dev.*, 658 So. 2d at 525 (citing George E. Harris, *A Treatise on the Law of Certiorari* § 1 (1893)). In more modern use, common law certiorari has been described as a writ issued by an appellate court to a lower court in cases where an appeal was unavailable to direct that the record of the lower court be provided for review to the appellate court to determine whether the lower court has exceeded its jurisdiction or not proceeded according to law. *Haines City Cmty. Dev.*, 658 So. 2d at 525 (citing 3 Fla.Jur.2d *Appellate Review* § 456 (1978)).

The Florida Supreme Court has stated multiple times that a common law writ of certiorari is available to obtain review of quasi-judicial action of an administrative agency where no other method of appeal is available. *See, e.g., Codomo v. Shaw*, 99 So. 2d 849, 852 (Fla. 1958); *De Groot v. Sheffield*, 95 So. 2d 912, 915-16 (Fla. 1957); *State ex rel. Landis v. Simmons*, 140 So. 187, 190 (Fla. 1932); *Haines City Cmty. Dev.*, 658 So. 2d at 530; *see also G-W Dev.*, 317 So. 2d at 829-30. Florida Rule of

17

Appellate Procedure 9.190(b)(3) expressly recognizes that certiorari is the appropriate remedy to review quasi-judicial action of an administrative agency where no other method of appeal is available. Fla. R. App. P. 9.190(b)(3) ("Review of quasi-judicial decisions of any administrative body, agency, board, or commission not subject to the Administrative Procedure Act must be commenced by filing a petition for certiorari in accordance with rules 9.100(b) and (c), unless judicial review by appeal is provided by general law."); *see also Decker*, 85 So. 3d at 574.

Based on the foregoing, we conclude that Lightsey's remedy in this case is to seek review of the Commission's Final Order by writ of certiorari. However, as explained above, both district courts and circuit courts have the power to issue common law writs of certiorari. Therefore, we must determine which court was the appropriate court in which Lightsey should have sought certiorari review. We conclude that circuit court was the appropriate forum.

The Florida Supreme Court appears to have approved the filing of petitions to review administrative action of state agencies in circuit court. For example, the Florida Supreme Court has held that a petition for mandamus is an acceptable remedy for a prisoner seeking review of an order of the Florida Parole Commission. *Sheley v. Florida Parole Comm'n*, 720 So. 2d 216, 217 (Fla. 1998) (citing *Griffith v. Florida Parole and Probation Comm'n*, 485 So. 2d 818 (Fla. 1986)). In making that holding, the Florida Supreme Court stated that "[s]uch petitions are properly

18

directed to the circuit courts." *Id.* at 217. Additionally, in the case of local administrative action, the Florida Supreme Court has held that "a final administrative decision by a local administrative body is initially reviewable by certiorari to the circuit court." *Decker*, 85 So. 3d at 574 (citing *Haines City Cmty. Dev.*, 658 So. 2d at 530); *see also Sheley v. Florida Parole Comm'n*, 703 So. 2d 1202, 1206 (Fla. 1st DCA 1997), *approved*, 720 So. 2d 216 (Fla. 1998). While neither of these examples is precisely on point – mandamus[9] is not certiorari and a local agency is not a state agency – we find them to be analogous and the best guidance that we have from the Florida Supreme Court.

We also note that in a case in which the Florida Supreme Court determined that both it and a circuit court possessed jurisdiction over a petition for writ of certiorari to review administrative action, the Court stated that "[a]s a matter of judicial administration, this court will not ordinarily issue the writ of certiorari to review the rulings of an administrative board so long as a court of inferior jurisdiction is empowered to issue it."[10] *Nat'l Dairy Prods. Corp. v. Odham*, 100 So. 2d 394, 395 (Fla. 1958). Heeding the Supreme Court's example, if we did possess concurrent jurisdiction with a circuit court over a petition for writ of certiorari, we

---

[9] The First District noted in its *Sheley* opinion that certiorari, and not mandamus, may in fact be the more appropriate remedy for an inmate challenging the merits of an order of the Florida Parole Commission. 703 So. 2d at 1205, n.2.

[10] In *National Dairy Products Corp.*, the Florida Supreme Court construed a prior version of the Florida Constitution.

would find it appropriate to decline such jurisdiction in favor of the circuit court. For one reason, the circuit court's decision on the petition will be reviewable by a district court on second-tier certiorari review, Fla. R. App. P. 9.030(b)(2)(B), while our decision on the petition would not be reviewable by the Florida Supreme Court unless one of the more limited bases for that Court's jurisdiction were satisfied. Fla. R. App. P. 9.030(a).

For these reasons, we hold that where a party seeks certiorari review of administrative action of the Commission acting pursuant to its constitutional authority, the appropriate court in which to seek such review is circuit court.

We note that the First District faced an essentially identical question in *Decker*. In that case, a student sought judicial review in the First District Court of Appeal under the APA of an order entered by the University of West Florida (the "University"). *Decker*, 85 So. 3d at 573. Similar to this case, the First District found that the University was acting pursuant to its constitutional authority and that, therefore, the University was not an "agency" under the APA and the court lacked jurisdiction over a direct appeal of the University's order. *Id.* at 573. Also like us, the court determined that certiorari was the appropriate remedy and that both district courts and circuit courts possess the power to issue writs of certiorari. *Id.* at 574. The court then considered which court was the appropriate forum for seeking certiorari review and concluded that circuit court was the appropriate forum. *Id.*

20

Both this case and *Decker* involved the question of the proper court in which a party should seek certiorari review of quasi-judicial administrative action of a state constitutional entity that is not an "agency" under the APA. The only difference between *Decker* and this case is the entity involved – a University in *Decker* and the Commission in our case. Thus, we join the First District in concluding that where a party seeks certiorari review of quasi-judicial administrative action of a state constitutional entity that is not subject to the APA, the proper court in which to seek such review is the circuit court.

## Conclusion

The Florida Constitution grants district courts jurisdiction over direct appeals of administrative action when "prescribed by general law." Art. V, § 4(b)(2), Fla. Const. There is no general law granting this court jurisdiction over a direct appeal of the administrative action taken by the Commission in this case. The APA, by its plain terms, does not grant us jurisdiction over this action because the Commission, when acting pursuant to constitutional authority, is not an "agency" and its actions are not "agency action" as defined by the APA.

The Commission has adopted procedures that incorporate the language of the APA, but the Commission's procedures are just that – the Commission's procedures. The Commission's procedures are not general law and cannot grant us jurisdiction over a direct appeal of administrative action. Additionally, even if the Commission

21

had the power to and did "adopt the APA" to govern the procedures of the administrative proceeding conducted in this case, it was still the Constitution, not the APA, that granted the Commission the power that it exercised in enforcing the Fencing Rule. Therefore, even if the Commission was acting pursuant to the APA in conducting the administrative proceeding at issue in this case, the APA still would not grant us jurisdiction over this appeal.

However, as explained above, Rule 9.040(c) of the Florida Rules of Appellate Procedure provides that "[i]f a party seeks an improper remedy, the cause shall be treated as if the proper remedy had been sought," and Rule 9.040(b)(1) states that "[i]f a proceeding is commenced in an inappropriate court, that court shall transfer the cause to an appropriate court." Applying these two rules, we treat the notice of appeal, which was timely filed with the agency clerk, as a petition for writ of certiorari and transfer the petition to the Circuit Court of Ninth Judicial Circuit in and for Osceola County, which is the county in which Lightsey's hunting preserve is located.[11] § 47.011, Fla. Stat.

PETITION TRANSFERRED.

GANNAM and BROWNLEE, JJ., concur.

---

[11] By our transfer of this case to the Ninth Judicial Circuit Court in Osceola County, we express no view regarding whether once there the Commission may invoke the home venue privilege to transfer the case to the county in which the Commission maintains its headquarters. If the Commission attempts to invoke the home venue privilege, the circuit court may decide that issue in the first instance.

Diane Buerger, Victor R. Smith, and Michael E. Raiden, of Victor R. Smith Law Group, P.A., Winter Haven, for Appellant.

Bridget K. McDonnell, Assistant General Counsel, and Joseph Meyer, Assistant General Counsel, of Florida Fish and Wildlife Conservation Commission, Tallahassee, for Appellee.


NOT FINAL UNTIL TIME EXPIRES TO FILE MOTION FOR REHEARING
AND DISPOSITION THEREOF IF TIMELY FILED